**Barbara MORGAN, Plaintiff,**

v.

**MARKERDOWNE CORPORATION, d/b/a Computer Learning Center, et al., Defendants.**

**C.A. No. 96–1910(DRD).**

United States District Court, D. New Jersey.

July 16, 2001.

---

Madeline L. Houston, Melissa J. Totaro, Houston & Totaro, Paterson, NJ, for Plaintiff Barbara Morgan.

Frank Holahan, Harwood Lloyd, LLC, Hackensack, NJ, for Defendants Markerdowne Corporation, d/b/a Computer Learning Center, Valerie Dorras, and Graeme Dorras.

Marguerite M. Schaffer, Deborah A. Young, Shain, Schaffer & Rafanello, P.C., Bernardsville, NJ, for Cross–Claimant Chase Manhattan Bank.

David L. Menzel, Cuyler Burk, LLP, Parsippany, NJ, for Third–Party Plaintiff Citibank (New York State).

Ronald J. Shaffer, William H. Stassen, Fox, Rothschild, O'Brien & Frankel, LLP, Philadelphia, PA, for Third–Party Defendants Illinois Student Assistance Commission and United Student Aid Funds, Inc.

Stuart E. Schiffer, Acting Assistant United States Attorney General, Robert J. Cleary, United States Attorney, Susan C. Cassell, Deputy Civil Chief, J. Christopher Kohn, Robert M. Hollis, Jeannine Lesperance, Matthew J. Fader, Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Sarah L. Wanner, Office of General Counsel, United States Department of Education, Washington, DC, for Third–Party Defendant Roderick R. Paige, Secretary of the United States Department of Education.

John J. Farmer, Jr., Attorney General of New Jersey, Trenton, NJ, for New Jersey Higher Education Assistance Authority.

## *OPINION*

DEBEVOISE, Senior District Judge.

This matter is before the court on the motion of plaintiff Barbara Morgan ("Morgan") for final class certification, and on the cross-motions of defendants Markerdowne Corporation, d/b/a Computer Learning Center ("CLC"), Graeme Dorras, and Valerie Dorras, third-party plaintiff Citibank (New

York State), and third-party defendants Illinois Student Assistance Commission, United Student Aid Funds, Inc., and Roderick R. Paige ("Paige"), Secretary of the United States Department of Education, for decertification of the conditionally certified plaintiff class of which Morgan is a member. For the reasons that follow, plaintiff's motion will be denied, and defendants' cross-motions will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The complete procedural history and factual background of this action have been exhaustively recited in prior opinions in this case, and need not be recounted here. *See, e.g., Morgan v. Markerdowne Corp.,* 976 F.Supp. 301 (D.N.J.1997) (cited for purposes of this opinion only as *"Morgan I"); Morgan v. Markerdowne Corp. et al.,* Slip Opinion filed 1/27/99, Docket No. 110 (cited for purposes of this opinion only as *"Morgan II"*). It remains to describe only those of Morgan's allegations that support her extant claims against the remaining defendants, which claims are the sole subject of her instant motion for final class certification and the cross-motions for decertification. For the sake of clarity, Morgan's dismissed claims will first be described.

### Morgan's Dismissed Claims

Most of Morgan's claims against the defendants named in her second amended complaint have been dismissed. The dismissed claims include Morgan's claim against the Secretary of the United States Department of Education, *see Morgan I,* 976 F.Supp. at 321; any claim she might have sought to press under the FTC Holder Rule, *Morgan*

*I,* 976 F.Supp. at 312; all of her claims brought under New Jersey common law or the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8–1—56:8–2, 56:8–3—56:8–20 (1960, as amended)[1] against lenders Citibank (New York State) and Chase Manhattan Bank ("Chase") (formerly Chemical Bank) and guarantor agencies American Student Assistance, Illinois Student Assistance Commission, and United Student Aid Funds, Inc. based upon the school defendants' alleged fraudulent conduct, *id.* at 319; and all of her claims brought under New Jersey common law against those lenders and guarantor agencies based upon their alleged fraudulent conduct, *id.* at 321. Morgan's only remaining claims for affirmative relief lie against defendants Markerdowne Corporation, CLC, Valerie Dorras, and Graeme Dorras (collectively, the "school defendants"; the other defendants shall be referred to collectively as the "nonschool defendants") under New Jersey's common law of fraud and its Consumer Fraud Act.

### Morgan's Remaining Allegations and Claims

As a prelude to determining Morgan's motion for final class certification and the cross-motions for decertification, it is helpful to rehearse the factual allegations in Morgan's second amended complaint that underlie her remaining claims against the school defendants. Many of these allegations are, naturally, contested by the school defendants.

On September 17, 1990, Morgan, who was then unemployed, went to CLC in Paramus, New Jersey to inquire about learning vocational skills at CLC so that she could find a job. Morgan's Second Amended Complaint, filed 4/22/96, ¶¶ 2–5, at 2.[2] While at CLC,

---

1. The Consumer Fraud Act has been amended several times since Morgan filed her Second Amended Complaint in the Law Division of the New Jersey Superior Court on April 22, 1996 and since this action was removed to this court immediately thereafter on April 25, 1996. These amendments have no bearing on this action.

2. As noted above, Morgan's Second Amended Complaint, attached to and incorporated into which was her Amended Complaint, was filed with the New Jersey Superior Court on April 22, 1996, three days before Richard W. Riley, then the Secretary of the United States Department of

Education, removed this action to this court under 28 U.S.C. § 1442(a)(1). Though Morgan's Second Amended Complaint was on file with the Clerk of the New Jersey Superior Court at the time of removal, and though the parties to this action have all heretofore assumed the Second Amended Complaint to be Morgan's operative pleading, the Second Amended Complaint is absent from the file in this action maintained by the clerk of this court. Accordingly, the Second Amended Complaint, a copy of which has been provided to chambers by Morgan's counsel, will be filed with this opinion and the order it accompanies, and shall be deemed to have been among

Morgan spoke with Valerie Dorras, Director of Admissions and fifty-percent (50%) owner of CLC. Second Am. Compl. ¶ 6, at 2. Valerie Dorras told Morgan that CLC provided excellent placement services, *id.* ¶ 7, at 2–3, and that though Morgan was unemployed and had three children, she could afford to attend CLC by taking out loans that she would easily be able to repay once she got a job after she left CLC. *Id.* ¶ 9, at 3. Of critical importance to disposition of these motions, Valerie Dorras also told Morgan that if Morgan attended (and presumably, if she graduated from) CLC, "she would never be unemployed again." *Id.* ¶ 7, at 3 (emphasis added). Valerie Dorras made these statements to Morgan knowing they were false, *id.* ¶ 11, at 3, and Morgan relied upon them in enrolling at CLC, *id.* ¶ 14, at 4.

Plaintiff took out two loans in order to attend CLC: a Guaranteed Student Loan, also known as a Stafford Loan, in the principal amount of two thousand six hundred twenty-five dollars ($2,625), plus interest; and a Federal Supplemental Loan, apparently in the principal amount of two thousand dollars ($2,000) plus two hundred forty-seven dollars ($247) in interest. *Id.* ¶¶ 25, 26, at 5. CLC procured these loans for Morgan from Chemical Bank, now Chase Manhattan Bank. *Id.* ¶¶ 21–23, at 4; ¶ 24, at 5.

Despite perfect attendance at her course of instruction at CLC, graduation from CLC with a B average, contact with the CLC placement office, and her own efforts, Morgan was unable to find a job as a computer operator, the position for which she had been trained at CLC. Second Am. Compl. ¶ 29, at 5.

The school defendants have made numerous misrepresentations with a single objective: enticing prospective CLC students into enrolling at CLC by convincing them that CLC's curriculum and training will guarantee, or will at least significantly enhance, each student's ability to get a job in the area of his or her instruction at CLC, when that is in fact untrue. *Id.* ¶¶ 30–34, at 5–6; ¶¶ 70, 71, at 12; ¶¶ 76–77, at 15; ¶¶ 80–83, at 16. Members of the conditionally certified plaintiff class relied upon these misrepresenta-

tions in enrolling in and attending CLC. *Id.* ¶ 35, at 6; ¶ 84, at 17.

These misrepresentations include: i) oral statements that CLC has a job-placement rate of at least ninety percent (90%), *id.* ¶ 73(a), at 12; ii) written statements to that effect made in brochures for prospective students, in a leaflet posted behind the reception desk at CLC, and in newspaper advertisements, *ibid.;* iii) express or implied oral statements guaranteeing job placement after graduation from CLC, *id.* ¶ 73(b), at 13; iv) false oral and written statements that CLC places students in jobs, when in fact its placement services are of little or no value to CLC students, *id.* ¶ 73(c), at 13; v) false written testimonials given by CLC alumni in brochures and newspaper advertisements, *id.* ¶ 73(d), at 13; and vi) statements that CLC cannot graduate its students quickly enough to meet the demand for their services and skills in the job market, *id.* ¶ 75(b), at 14.

Based on these allegations, Morgan maintains claims against the school defendants under the New Jersey Consumer Fraud Act for the school defendants' alleged fraudulent conduct and CLC's allegedly unconscionable tuition costs. Second Am. Compl. at 15, 17–18. She prays for treble damages and attorney's fees on these claims under the Act. Am. Compl. at 15, 17–18. Morgan further maintains a New Jersey common-law fraud claim against the school defendants for their alleged express and implied misrepresentations to Morgan and her fellow class members. *Id.* at 16–17. She prays for actual and punitive damages on this claim. *Id.* at 17.

On December 22, 1995, the Law Division of the New Jersey Superior Court conditionally allowed Morgan to proceed on her claims "on behalf of all persons who graduated from defendant Computer Learning Center on March 30, 1995 or within six and one half years prior to said date, or who otherwise stopped attending or withdrew from defendant Computer Learning Center on March 30, 1995 or within six years prior thereto. . . ." Order of Mandak, J., 12/22/95, Exhibit B to Notice of Removal, at 2. This definition of the plaintiff class remains opera-

the pleadings originally forwarded to this court

on or about April 25, 1996.

tive. Morgan now seeks final certification of this case as a class action under Rule 23 of the Federal Rules of Civil Procedure.

## DISCUSSION

### Rule 23 of the Federal Rules of Civil Procedure

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four initial, generally applicable conditions that a nominal class plaintiff must satisfy before any case can be finally certified as a class action:

> (1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

FED.R.CIV.P. 23(a) (1937, as amended).

■ Rule 23(b)(1) through (b)(3) further defines three distinct species of class actions. A nominal class plaintiff must demonstrate that her proposed class action meets the requirements of one of these three subsections in order for her action to be certified. *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 452 (D.N.J.1998). Here, Morgan, the nominal class plaintiff, seeks final class certification under Rule 23(b)(3). She therefore bears the burden of demonstrating that her proposed class action satisfies all the requirements of Rule 23(a) and Rule 23(b)(3). *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3rd Cir.1994), *cited in Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 284 (D.N.J.1997).

■ In order for Morgan's conditionally certified class action to receive final class certification under Rule 23(b)(3), she must not only fulfill the requirements of Rule 23(a), but must also show, *inter alia*, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ["predominance"], ..." FED.R.CIV.P. 23(b). Rule 23(b)'s predominance requirement is much stricter than Rule 23(a)'s commonality and typicality requirements, *Georgine v. Am-*

*chem Prod., Inc.*, 83 F.3d 610, 626 (3rd Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997), *cited in In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3rd Cir.2001); commonality is a necessary but not a sufficient condition for predominance. *In re LifeUSA*, 242 F.3d at 145. If the proponent of class certification fails "to demonstrate the propriety of maintaining this action as a class action under Rule 23(b)(3), it is unnecessary to address the Rule 23(a) prerequisites of numerosity, commonality, typicality and adequacy of representation." *Young v. Jo–Ann's Nut House, Inc.*, 1980 WL 1987, at *5 (D.N.J. Dec. 16, 1980).

■ That common questions of law or fact must be shown to predominate in order for a case to be certified as a class action does not mean that class certification must always be denied in the face of questions of law or fact affecting only individual members of a proposed class. *Chin*, 182 F.R.D. at 453. However, such individualized questions of law or fact must be of lesser overall significance within the scope of the case, and they must be manageable in a single class action. *Ibid.*

■ Though final class certification should not turn on the court's evaluation of the merits of the parties' legal or factual claims, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), *cited in Stephenson*, 177 F.R.D. at 284, it is important to note that the court may analyze the parties' claims, and facts that have transpired through discovery, in gauging whether the requirements of Rule 23 have been met. *Stephenson*, 177 F.R.D. at 284 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996)).

### Morgan II

Prior to the completion of discovery, this court in *Morgan II* all but completely foreclosed final class certification. Adverting to Morgan's allegations that the school defendants made divers oral and written statements in a variety of fora to numerous prospective students (*see supra* p. 345), the court laid down the law of the case in holding

that final class certification would ultimately be denied, due to the predominance of individual and not common issues, unless Morgan could establish, based on information unearthed during discovery, that the school defendants' many misrepresentations were but part of a unitary fraudulent scheme. *Morgan II,* at 20. Without establishing or acknowledging the existence of such a cause of action (analogized to the fraud-on-the-market theory of liability well established in federal securities law), the court hypothesized that under such a theory, the individual class members might be exempted from proving reliance upon particular misrepresentations, and predominance would be at hand because the existence of such a unitary fraudulent scheme itself would be the common question overspreading the entire action. *Id.* at 20–21. The court allowed that final class certification would be appropriate if and only if Morgan demonstrated the predominance of a common issue of law or fact in the form of a unitary fraudulent scheme concocted and enacted by the school defendants.

### Morgan's Unitary–Fraudulent–Scheme Cause of Action Is Unavailable under New Jersey's Common Law of Fraud

■ Faced with the law of the case established in *Morgan II,* Morgan has, quite understandably, tried to weave her divergent allegations of misrepresentation and fraud into the fabric of a unitary fraudulent scheme. Her argument is strikingly simple: CLC does not provide its students with training, education, or experience of any "substantial value" in the job market; its program is thus intrinsically worthless; therefore, every oral or written statement made by CLC or its alumni promoting CLC or soliciting students is by definition part of a unitary fraudulent scheme. Though this argument might have passed muster at the time *Morgan II* was decided, it has been rendered insupportable by a recent decision of the Supreme Court of New Jersey. Morgan cannot make out a unitary-fraudulent-scheme cause of action against the school defendants.

In *Morgan II,* as noted above, this court analogized to the fraud-on-the-market theory familiar to federal securities law in adumbrating the only possible cause of action—the

allegation of a unitary fraudulent scheme perpetrated by the school defendants—that might allow Morgan to demonstrate the predominance of common issues of law or fact and so to win final class certification. However, after *Morgan II* was handed down on January 27, 1999, the Supreme Court of New Jersey decided *Kaufman v. i–Stat Corp.,* 165 N.J. 94, 754 A.2d 1188 (2000). Therein, the court declared the fraud-on-the-market theory to be a stranger to New Jersey securities law and to be inconsistent with New Jersey's common law of fraud, which the court declined the invitation to expand. *Kaufman,* 165 N.J. at 97, 754 A.2d at 1189. The court rehearsed the well-established rule of New Jersey law that actual receipt and consideration of any alleged misrepresentation—reliance—is central to a common-law fraud claim. 165 N.J. at 109, 754 A.2d at 1195. The court went so far as to refuse to accept any proxy even for a party's indirect reliance upon a fraudulent misrepresentation. 165 N.J. at 111, 754 A.2d at 1197.

If the Supreme Court of New Jersey has flatly refused to expand New Jersey's common law of fraud to adopt the fraud-on-the-market theory in its quintessential context—*Kaufman* was a securities-fraud case brought under New Jersey law—surely it would refuse to countenance an analogous theory sought to be imported into New Jersey's common law of fraud in a case brought outside that context. This is such a case. *Kaufman* erects an insuperable barrier to the final class certification of Morgan's case under the theory of a unified fraudulent scheme.

### Final Class Certification Is Unjustified on Morgan's Common–Law Fraud Claims

Even if Morgan had not been relegated by the law of the case to reliance upon a unified-fraudulent-scheme theory in order to win final class certification, the allegations supporting her common-law fraud claims, and the factual underpinnings of those allegations that have emerged from the depositions of thirty-one members of the proposed plaintiff class, could not justify final class certification under Rule 23. Morgan's position in this

regard is no stronger today than it was at the time *Morgan II* was decided.

■ Under New Jersey common law, fraud requires proof of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) **reasonable reliance thereon by the other person;** and (5) resulting damages." *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610, 691 A.2d 350, 367 (1997) (emphasis added), *quoted in Kaufman,* 165 N.J. at 109, 754 A.2d at 1195. "[A] fraud case may be unsuited for treatment as a class action if there was **material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.**" ADVISORY COMMITTEE NOTE TO 1966 AMENDMENT TO FED.R.CIV.P. 23(b)(3) (emphasis added), *quoted in In re LifeUSA,* 242 F.3d at 145 n. 9, *and in Stephenson,* 177 F.R.D. at 290–91.

Morgan alleges Valerie Dorras told her that if Morgan attended CLC, "she would never be unemployed again." Second Am. Compl.¶ 7, at 3, *quoted supra* p. 5. Paige points out, and Morgan does not dispute, that no other member of the proposed plaintiff class has testified or alleged that he or she ever received from Valerie Dorras or anyone else a written or oral promise of lifelong employment following attendance at CLC. Paige's Brief at 12. Clearly, then, there is a material variation between the misrepresentation allegedly made to Morgan and those misrepresentations allegedly made to the other proposed class plaintiffs. Indeed, Morgan's allegation, the foundation of her entire case, is not merely individualized: it is unique. Morgan's claims therefore lack commonality, as they turn on questions of law and fact not common to the class; they lack typicality, as they are utterly different from those of all other class members; and they lack predominance, as they do not turn on questions of law or fact common to the members of the class that predominate over any questions affecting only individual members.

■ Material variation also exists between Morgan's alleged reasonable reliance upon Dorras's oral promise of lifelong employment, made to Morgan and Morgan alone, and the other proposed class plaintiffs' alleged reasonable reliance on other alleged misrepresentations. The deposition testimony reveals that students enrolled at CLC for a myriad of reasons. Some students enrolled at CLC because of its location; some because CLC had recruited at their high schools; some because of recommendations from government agencies; some because of recommendations from friends or relatives; some because they chose CLC over other computer schools. Nonschool Defendants' Brief at 15–17. Indeed, only six students testified that they enrolled at CLC wholly or at least partly because they had heard or read representations about CLC's job placement rate and its provision of employment opportunities, Chase's Brief at 13 (citing Morgan's Principal Brief at 28, 52, 54, 57, 59, 61); and only four students testified that they learned of CLC through allegedly or potentially misleading advertisements. Paige's Brief at 6 & n. 5. These divaricated reasons for the proposed class plaintiffs' enrollment at CLC invalidate the notion that all or even most of them enrolled at CLC because of common misrepresentations made to them, and so vitiate the commonality, typicality, and predominance required for final class certification.

When students who seek to be named as plaintiffs in a proposed class action may have considered a variety of factors in deciding to enroll in a school alleged to have defrauded them, absent are typical and predominant questions whether such plaintiffs relied upon misrepresentations made by the school in deciding to enroll therein; class certification must therefore be denied. *Rodriguez v. McKinney,* 156 F.R.D. 112, 116 (E.D.Pa. 1994) (no predominance); *Graham v. Sec. Sav. & Loan,* 125 F.R.D. 687, 691 n. 4 (N.D.Ind.1989) (no typicality), *aff'd sub nom. Veal v. First Am. Sav. Bank,* 914 F.2d 909 (7th Cir.1990); *see Torres v. CareerCom Corp.,* 1992 WL 245923, at *5 (E.D.Pa. Sept. 18, 1992) (no predominance); *see generally Seiler Jr. v. E.F. Hutton & Co.,* 102 F.R.D. 880, 890 (D.N.J.1984) (no typicality).

■ Class certification is inappropriate also because Morgan claims to have relied solely upon Valerie Dorras's alleged oral promise of lifelong employment in enrolling at CLC. *See supra* pp. 345, 348. The rule is well-established that fraud cases based on alleged oral misrepresentations are unsuitable for class action treatment. *Stephenson,* 177 F.R.D. at 291 (no predominance) (citing *Eisenberg v. Gagnon,* 766 F.2d 770, 786–87 (3rd Cir.1985)); *Seiler Jr. v. E.F. Hutton & Co.,* 102 F.R.D. 880, 888, 890, 891 (D.N.J. 1984) (no typicality, no predominance). This rule has been recited and followed in cases directly in point involving fraud claims based on alleged oral misrepresentation lodged against educational and vocational institutions. *Tipton v. Sec'y of United States Dep't of Educ.,* 1993 WL 545724, at *8, *13 (S.D.W.Va. Aug. 28, 1992) (*per* Copenhaver, J.) (no typicality); *W. Va. ex rel. Miller v. Sec'y of United States Dep't of Educ.,* 1993 WL 545730, at *10, *12 (S.D.W.Va. Sept. 30, 1993) (*per* Copenhaver, J.) (no typicality); *Torres,* 1992 WL 245923, at *5 (no predominance); *Graham,* 125 F.R.D. at 690, 691 nn. 3, 4 (no commonality, no typicality).

The exception to this rule allows for class certification where the alleged oral misrepresentations are identical, uniform, or standardized. *Tipton,* 1993 WL 545724, at *8; *Graham,* 125 F.R.D. at 691 n. 3 (citing *Seiler,* 102 F.R.D. at 888). Morgan bears the burden of demonstrating the identicality, uniformity, or standardization of the oral misrepresentations alleged to have been made to her and to the other proposed class plaintiffs. *See Stephenson,* 177 F.R.D. at 291; *Seiler,* 102 F.R.D. at 889. This she cannot do: no proposed class plaintiff has testified or alleged that he or she ever received from Valerie Dorras or anyone else a written or oral promise of lifelong employment following attendance at CLC. *See supra* p. 348.

■ Morgan's bid for final class certification on her common-law fraud claims fails for another reason: the requirement of proof of damages resulting from reasonable reliance upon an actionable misrepresentation. *Gennari,* 148 N.J. at 610, 691 A.2d at 367. In the first instance, as Morgan herself has acknowledged, many of the proposed class plaintiffs obtained gainful employment as a result of having attended CLC. School Defendants' Brief at 4; Chase's Brief at 13 (citing Morgan's Principal Brief at 65–66); Nonschool Defendants' Brief at 20; Paige's Brief at 11–12 & n. 25, 13–14 n. 28. Indeed, several of the proposed class plaintiffs testified that they have no claim against CLC. Paige's Brief at 14. Obviously, students who found work as a result of having attended CLC—and many students did—have suffered no damages. This destroys typicality, commonality, and predominance, and defeats final class certification.[3]

Further, the failure of certain CLC students to find work after having attended CLC is attributable to a set of wildly divergent circumstances. Some students changed their minds about pursuing computer jobs; some found jobs on their own; some students had difficulty with the English language; some students moved, hampering their work attendance; some students had transportation problems; and some students simply had negative attitudes. School Defendants' Brief at 4–5. Some students dropped out before graduation; some were dismissed before graduation; some graduated but were ineligible for job placement due to low grades; and some students declined to seek employment because of illness, military service, or pregnancy. Nonschool Defendants' Brief at 13–14. Given these divergent circumstances, typicality, commonality, and predominance are lacking, and final class certification must be denied.

---

**3.** Certain defendants have argued that those proposed class plaintiffs who have suffered no damages lack standing to press their claims. This argument is without merit. Morgan has alleged sufficient injury-in-fact to have standing to press her claims and to seek final class certification. This satisfies the case-or-controversy requirement of Article III of the United States Constitution. *Krell v. Prudential Ins. Co. of Am.* (*In re Prudential Ins. Co. of Am. Sales Practices Litig.*), 148 F.3d 283, 306–07 (3rd Cir.1998); *see generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (describing the relationship between standing and the case-or-controversy requirement).

### Final Class Certification Is Unjustified on Morgan's Claims under New Jersey's Consumer Fraud Act

Morgan's remaining claims lie under the New Jersey Consumer Fraud Act, the applicable provisions of which read, in pertinent part, as follows:

The act, use or employment by any person[4] of any unconscionable commercial practice, fraud, false pretense, false promise, [or] misrepresentation ... in connection with the sale or advertisement of any merchandise ..., or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....

N.J. STAT. ANN. § 56:8–2 (1960, as amended 1976).

**Any person who suffers any ascertainable loss** of moneys or property, real or personal, **as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act** ... may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.

N.J. STAT. ANN. § 56:8–19 (1971) (emphasis added).

■ Though a plaintiff need not prove reliance upon a misrepresentation to prevail under the Consumer Fraud Act, *Carroll v. Cellco P'ship*, 313 N.J.Super. 488, 502, 713 A.2d 509, 516 (App.Div.1998), she must show ascertainable loss that was caused by an unlawful practice of the defendant in order to recover thereunder. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 473, 541 A.2d 1063, 1067 (1988); *Carroll*, 313 N.J.Super. at 502, 713 A.2d at 516; *Gross v. Johnson & Johnson–Merck Consumer Pharms.*, 303 N.J.Super. 336, 344, 696 A.2d 793, 797 (Law Div.1997).

■ As noted above, *see supra* p. 349, many of the proposed class plaintiffs found work as a result of having attended CLC, and suffered no ascertainable loss whatsoever. This destroys typicality, commonality, and predominance, and precludes final class certification. *See W. Va. ex rel. Miller*, 1993 WL 545730, at *13–*14. Even those proposed class plaintiffs who have suffered an ascertainable loss cannot speak with one voice in declaring an unlawful practice of CLC to be the cause of such loss. *See supra* pp. 348, 349–50. This too precludes class certification.

### Dismissal of Citibank's Third–Party Complaint

Though Morgan never truly had a claim against Citibank at all, as Citibank played no role in the procurement or issuance of Morgan's student loans, her nominal claim against Citibank was dismissed. *Morgan I*, 976 F.Supp. at 312. Despite this dismissal, Citibank's third-party complaint filed in this action subsisted because certain of the proposed class plaintiffs alleged that Citibank had played a role in the procurement or issuance of student loans that they had taken out to pay tuition at CLC. As class certification will be denied, the only plaintiff remaining in this action will be Morgan, who has no claim against Citibank. Therefore, none of the third-party defendants "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff," FED.R.CIV.P. 14(a) (1937, as amended),—for no plaintiff has a claim against Citibank. Citibank's third-party complaint shall therefore be dismissed. *See Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2nd Cir.1984); *Velsini v. Cadmus*, 152 F.R.D. 442, 445 (N.D.N.Y.1994).

### CONCLUSION

For the foregoing reasons, the plaintiff's motion for final class certification shall be denied, and the defendants' motions for de-certification of the conditionally certified plaintiff class shall be granted. An appropriate order shall enter.

---

4. Each of the school defendants is a "person" under the Consumer Fraud Act. *See* N.J. STAT ANN. § 56:8–1(d) (1960, as amended 1968).