**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5391-18T1

SHIRLEY POLANCO,
individually and on behalf
of all others similarly situated,

    Plaintiff-Appellant,

v.

STAR CAREER ACADEMY,
SC ACADEMY HOLDINGS, INC.
and SC ACADEMY, INC.,

    Defendants-Respondents.

_____

        Argued telephonically May 18, 2018 –
        Decided July 17, 2020

        Before Judges Sumners, Geiger and Natali.

        On appeal from an interlocutory order of the Superior
        Court of New Jersey, Law Division, Camden County,
        Docket No. L-0415-13.

        Thomas M. Marrone argued the cause for appellant
        (Greenblatt Pierce Funt & Flores, LLC, and
        MoreMarrone LLC, attorneys; Patricia V. Pierce and
        Thomas M. Marrone, on the brief).

David Jay argued the cause for respondents (Greenberg Traurig LLP, attorneys; David Jay, Jason Harris Kislin and Paige S. Nestel, on the brief).

PER CURIAM

This case returns to us on leave granted and after remand proceedings directed by our previous opinion in which we reversed the trial court's class certification ruling. See Polanco v. Star Career Acad., No. A-3756-15 (App. Div. July 26, 2018) (slip op.). We also reversed the jury's verdict and attendant attorneys' fee award. Id. at 9.

In that decision, we concluded that the trial court improperly granted class certification because common issues of fact did not predominate over the specific issues relating to the individuals comprising the proposed class. Id. at 5-6. In this regard, we stated that "the individualized factual inquiries surrounding [defendants'] misrepresentations and the nexus between those misrepresentations and omissions and the class members' ascertainable loss compels decertification." Id. at 7. We also determined that although the court divided the class into sub-groups "to analyze the total paid by the class in relation to the differing circumstances of certain class members," this division "demonstrate[d] the significant individualized issues related to the nexus

between [defendants'] misrepresentations and the class members' damages." Id. at 8.

Despite our decision to decertify the class, we stated that "our decision should not be interpreted to conclude that a class is not an appropriate vehicle to address [defendants'] purported misrepresentations and omissions . . . for those who have paid tuition fees or other ascertainable losses." Id. at 9. To this end, we noted that "[s]uch a class action may further the goals of judicial economy, cost-effectiveness, convenience, and consistent treatment of class members, Iliadis[ v. Wal-Mart Stores, Inc., 191 N.J. 88, 104 (2007)]," but that the proposed class did not "satisfy the relevant Rules governing class actions." Polanco, slip op. at 7. Plaintiff did not seek Supreme Court review of our decision.

On remand, plaintiff again moved for class certification, and after hearing oral arguments, the court denied her motion in a June 7, 2019 order. On appeal, plaintiff raises the following argument:

> THE TRIAL [COURT] ERRONEOUSLY CONCLUDED THAT INDIVIDUAL DAMAGES EVIDENCE WAS REQUIRED TO ESTABLISH "LIABILITY-ONLY" AND ERRONEOUSLY DECLINED TO CERTIFY A "LIABILITY-ONLY" CLASS ACTION ON THIS BASIS

A. LIABILITY MAY BE ESTABLISHED ON A CLASSWIDE BASIS

1. STAR'S NONDISCLOSURE AND UNCONSCIONABLE PRACTICE

2. MATERIALITY

After reviewing the record in light of the contentions advanced on appeal, we affirm the court's order denying class certification as we conclude the court did not abuse its discretion when it determined common questions of law or fact failed to predominate over questions affecting individual members and that a class action was not "superior to other available methods for the fair and efficient adjudication of the controversy" as required by Rule 4:32-1(b)(3).[1]

I.

We assume familiarity with the underlying facts which are set forth in Polanco, slip op. at 5-12, and briefly recount them to provide necessary context for our opinion. Defendants are owners of for-profit schools, including the institution at issue, Star Career Academy (Star), that trains surgical technicians

---

[1] The parties have limited the issues on appeal to the predominance and superiority issues of Rule 4:32-1(b)(3). As such, we do not address the remaining requirements for maintaining a class action prescribed by Rule 4:32-1.

(ST).[2]  Defendants' mission is to provide "performance-based occupational training to prepare students for entry-level employment" in various fields, including allied health fields.

In 2011, the New Jersey Legislature passed N.J.S.A. 26:2H-12.63 (the ST law), which addressed five routes for employment as a surgical technologist in a New Jersey health care facility including successful completion of a "nationally or regionally accredited educational program for surgical technologists," N.J.S.A. 26:2H-12.63(a), or obtaining a "certified surgical technologist credential administered by the National Board of Surgical Technology and Surgical Assisting or its successor, or other nationally recognized credentialing organization," N.J.S.A. 26:2H-12.63(b).

There are two types of higher education accreditation:  programmatic and institutional.  Defendants did not receive programmatic accreditation from either nationally recognized accreditor of ST programs.  In August 2010, it received accreditation from the Accrediting Commission of Career Schools and Colleges (ACCSC), which is approved by the United States Department of Education

---

[2] We use the terms surgical technician and surgical technologist interchangeably for purposes of our opinion.

A-5391-18T1

(USDOE) to give institutional accreditation, but not programmatic accreditation, to an ST program.

Plaintiff enrolled in defendants' ST program in July 2011. Her tuition was $18,213. While enrolled in the program, plaintiff asked the director of the ST program whether the newly passed ST law would affect her ability to gain employment as a ST. The director assured her that graduating from the program would qualify her under the ST law, and the director of externships for defendants' Clifton campus also told plaintiff that defendants' ST program was accredited. Other students also questioned admissions officers as to the effect of the ST law, and those officers discussed the accreditation issues with their subordinates but instructed them to "sell the program as best [they] could."

The year after the ST law was enacted, an entire class of ST students withdrew from the program "in protest" because the Association of Surgical Technologists (AST), a national organization representing the profession, told them that the program was worthless. Thereafter, in August 2012, the New Jersey Department of Health (DOH) issued a memorandum stating that "[i]f a[n] [ST] program is listed as accredited [by the USDOE] . . ., then it is compliant with [the ST law]." Defendants sought to confirm whether its accreditation by the ACCSC met the requirements of the ST law, and the DOH responded that

"[an] [ST] program offered in New Jersey that is accredited by any accrediting agency recognized by the [USDOE] meets the requirements of the [ST law]."

Despite uncertainty about whether the ST program met the requirements of the ST law, defendants continued to enroll students. In February 2014, defendants began to provide current and prospective students with a written disclosure indicating that the law was in flux and defendants disagreed with any interpretation of the ST law finding that its ST program did not comply with the law. That disclosure stated:

> It has recently come to our attention that the [DOH] is considering revising its formal interpretation of the [ST] [l]aw. The [DOH]'s new proposed interpretation would require students to complete a program that maintains specialized accreditation in order to work as surgical technologists in New Jersey. Although Star's surgical technology program is approved by ACCSC, the program does not currently hold specialized accreditation.

As noted, plaintiff filed a class action complaint naming Star and alleging that Star violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (CFA), by misrepresenting information about the accreditation of its ST program in connection with the ST law. Plaintiff's proposed class consisted of "all individuals who were enrolled in the [ST] [p]rogram for surgical technician training to take place in the State of New Jersey as of June 29, 2011 and

7

thereafter." Over Star's objection, the court certified that class and appointed plaintiff class representative. It also denied Star's subsequent motion to decertify the class.

Prior to trial, the parties filed various in limine motions surrounding the admissibility of evidence pertaining to class members' employment, reasons for class members' unemployment (collectively, jobs evidence), and the value of the ST program degree (value evidence). Star sought to introduce jobs evidence which would have established that members of the class were employed as STs or in related fields and value evidence which would have proven that for many graduates the Star diploma was not worthless. It also attempted to introduce evidence establishing that its ST program compared positively with other similar programs and that its graduates were employed in jobs similar to the graduates of other programs. In finding that the claims of the class addressed Star's misrepresentations and omissions, rather than jobs, the court precluded Star from including the jobs and value evidence for liability purposes.

The jury returned a $2.969 million verdict in favor of the class. In accordance with the CFA, the court trebled the damages and entered final judgment, plus interest, in the amount of $9,091,941.35. Pursuant to plaintiff's motion for attorneys' fees and costs, the court awarded the class $1.7 million in

attorneys' fees. As noted, in our prior opinion, we reversed the trial court's determination to grant class certification, and accordingly reversed the jury's verdict and the attorneys' fee award.

On remand, plaintiff presented three alternative proposed classes: 1) a class with two sub-classes of students enrolled after December 20, 2011, who paid tuition or incurred student loans, the only difference being whether the students had signed the February 2014 disclosure; 2) a liability-only class of students enrolled after December 20, 2011, who paid tuition or incurred student loans, with the court managing individual damages claims to be presented in separate actions filed with the court pursuant to a court-managed mass action program; and 3) two liability and damages sub-classes of students enrolled after December 20, 2011, who paid tuition or incurred student loans, differing according to whether the students signed the 2014 disclosure.

On appeal, however, plaintiff appears to limit her argument to the claim that the court erroneously denied class certification because it should have certified a "liability only" class. At oral argument in the trial court and before us, plaintiff explained that the proposed liability class could obtain a liability judgment and each plaintiff could thereafter prove its damages in a separate proceeding or before a court appointed master.

The court denied plaintiff's renewed class certification motion and explained that in order to establish the elements of a claim under the CFA, plaintiff was obligated to prove a "nexus between the fraud and the loss." The court also noted that in Polanco we permitted defendants to present jobs evidence and value evidence and because defendants were therefore allowed to raise individual defenses regarding the nature of the misrepresentation and the causal relationship to plaintiff's ascertainable loss, the resulting individualized inquiries prevented plaintiff from satisfying the predominance requirement of Rule 4:32-1(b)(3).

The court also reasoned that a liability only class failed to meet the superiority requirement of the Rule as such a class would result in multiple damages mini-trials where defendants could similarly raise individual defenses in each matter. The court determined such a procedure would be inefficient and a waste of resources. This appeal followed.

## II.

We review a trial court's order granting or denying class certification for an abuse of discretion. Dugan v. TGI Fridays, Inc., 231 N.J. 24, 50 (2017). "Rule 4:32 vests in the trial court substantial control over management of a class action." In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 437 (1983); see also

Little v. Kia Motors Am., Inc., ___ N.J. ___, ___ (2020) (slip op. at 39). In determining whether the trial court has abused its discretion, we "'must ascertain whether the trial court has followed' the class action standard set forth in Rule 4:32-1." Dugan, 231 N.J. at 50 (quoting Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 506 (2010)). "Our role in this case is to review the trial courts' class certification decisions, not to act as a factfinder with respect to plaintiffs' substantive claims." Id. at 55 n.8.

Plaintiff argues that the court abused its discretion in denying the liability only class because the court mistakenly believed that such a class would require individual inquiries into causation and damages and the presentation of jobs and value evidence for each claim. Plaintiff contends that the jobs and value evidence have nothing to do with whether defendant withheld or misrepresented material information on a class-wide basis with respect to the fact that its ST program was not programmatically accredited. Plaintiff further maintains that defendant's violation of the CFA can be established without addressing causation and damages, because instead, the only inquiry should be whether defendant misrepresented or failed to disclose material information. We disagree.

We initially note that plaintiff essentially only briefed the issues relating to the liability only class, contrary to appellate practice to brief all issues, see Oasis Therapeutic Life Ctrs., Inc. v. Wade, 457 N.J. Super. 218, 234 n.12 (App. Div. 2018) (declining to consider an issue not briefed by the parties), and it is not for the court to propose an acceptable class, see Cameron v. S. Jersey Pubs., Inc., 460 N.J. Super. 156, 177 (App. Div. 2019) ("A plaintiff bears the burden of establishing class status."). In any event, we have considered the subclasses proposed and conclude they too fail to satisfy the predominance and superiority elements for the reasons stated.

In order to certify a class, the putative class plaintiff must first establish the requirements in Rule 4:32-1(a), which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

New Jersey courts "have consistently held that the class action rule should be liberally construed." Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 475 (App. Div. 2015) (quoting Lee, 203 N.J. at 519). This is especially true when

the allegations are based in consumer fraud, and in those types of cases, "a court should be slow to hold that a suit may not proceed as a class action." Riley v. New Rapids Carpet Ctr., 61 N.J. 218, 228 (1972).

To establish commonality of questions of law or fact, all factual and legal questions need not be identical for proposed class members. Iliadis, 191 N.J. at 108-09. Rather, "[a] single common question" satisfies the requirement of Rule 4:32-1(a)(2). Goasdone v. Am. Cyanamid Corp., 354 N.J. Super. 519, 529 (Law Div. 2002). In fact, the threshold for commonality of questions of law or fact is relatively low. Ibid.

In addition to the requirements of Rule 4:32-1(a), a class action may only be maintained when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3). The proposed class must be "'sufficiently cohesive to warrant adjudication by representation.'" Iliadis, 191 N.J. at 108 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). The court should conduct a pragmatic assessment of numerous factors, including:

> the significance of the common questions . . . [which] involves a qualitative assessment of the common and

individual questions rather than a mere mathematical quantification of whether there are more of one than the other[,] . . . whether the "benefit" of resolving common and presumably some individual questions through a class action outweighs doing so through "individual actions[,]" . . . [and] whether a class action presents a "common nucleus of operative facts."

[Lee, 203 N.J. at 519-20 (citing Iliadis, 191 N.J. at 108).]

A plaintiff need not show an "absence of individual issues or that the common issues dispose of the entire dispute." Iliadis, 191 N.J. at 108. The basic question is "whether the potential class, including absent members, seeks 'to remedy a common legal grievance.'" In re Cadillac, 93 N.J. at 431 (citation omitted). In this regard,

[p]laintiffs' burden at the class certification stage is not to prove [each] element of [the cause of action], although in order to prevail on the merits each class member must do so. Instead, the task for plaintiffs at class certification is to demonstrate that [each] element of [the cause of action] is capable of proof at trial through evidence that is common to the class rather than individual to its members.

[In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311-12 (3d Cir. 2008).[3]]

---

[3] As Rule 4:32 is modeled after Federal Rule of Civil Procedure 23, construction of the federal rule has been described as "helpful, if not persuasive, authority." Muise v. GPU, Inc., 371 N.J. Super. 13, 31 (App. Div. 2004).

In Harnish v. Widener Univ. Sch. of Law, 833 F.3d 298 (3d Cir. 2016), the proposed class consisted of law students claiming they paid higher tuition because of the defendant law school's allegedly misleading graduate employment statistics. The court stated:

> [A]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.
>
> [Id. at 304.]

The CFA sets forth three general categories of unlawful conduct: affirmative acts; knowing omissions; and regulatory violations. Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174 (App. Div. 2017). To prevail under the CFA, a plaintiff must show unlawful conduct by a defendant, an ascertainable loss by a plaintiff and a causal relationship between the two. Dugan, 231 N.J. at 51. Although "the Attorney General does not have to prove that the victim was damaged by the unlawful conduct, a private plaintiff must show that he or she suffered an 'ascertainable loss.'" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473 (1988) (quoting N.J.S.A. 56:8-2); see also Weinberg v. Spring Corp., 173 N.J. 233, 251 (2002) ("[T]he plain language of

the [CFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action . . . .").

The CFA provides treble damages when a person suffers an "ascertainable loss" as a result of:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .
>
> [N.J.S.A. 56:8-2.]

An ascertainable loss must be a "definite, certain and measurable loss, rather than one that is merely theoretical." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009). "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable." Ibid. (quoting Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005)). It does not have to involve out-of-pocket expenses but, instead, can include a lost benefit of the bargain as well. Ibid. (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11-13 (2004)).

The loss must be quantifiable even if it has not been experienced as an out-of-pocket loss. Hoffman v. AsSeenOnTV.com, Inc., 404 N.J. Super. 415,

426 (App. Div. 2009). An ascertainable loss occurs when a plaintiff receives something less than, and different from, what he or she reasonably expected in view of defendant's presentations. Kleinman v. Merck & Co., Inc., 417 N.J. Super. 166, 182 (Law Div. 2009). Damages are the "difference between the value of the product as represented and the actual value of the product received." Id. at 183.

In Morgan v. Markerdowne Corp., 201 F.R.D. 341, 350 (D.N.J. 2001), the court found that individualized causation issues precluded class certification based on a consumer fraud claim. In that case, the putative class alleged that the defendant, a computer training school, made numerous representations about the school's job-placement rate and the ability of students to obtain employment. Ibid. Specifically, the class alleged that the school made misrepresentations through oral statements, brochures, and false alumni testimonials. Ibid.

The court acknowledged that, although proof of reliance is not required under the CFA, the plaintiff was still required to establish that an ascertainable loss was caused by an unlawful action attributable to the defendant. Ibid. In denying class certification, the court concluded that many of the proposed class members "suffered no ascertainable loss whatsoever" because they found work after attending the school and, thus, "typicality, commonality, and

predominance" failed to exist. Ibid. The court further explained that, as to those class members who suffered an ascertainable loss as a result of unemployment, they too could not maintain a class action as they could not "speak with one voice in declaring an unlawful practice of [the defendant] to be the cause of such loss" because of the varying misrepresentations and reasons for enrollment. Ibid.

Initially, we note that plaintiff fails to cite a single case to support her apparent argument that a CFA claim may be proven in a class action without establishing causation and ascertainable loss. In fact, the cases plaintiff cites, and every New Jersey CFA case that addresses this issue, all stand for the proposition that a CFA claim requires proof of an unlawful act, causation and an ascertainable loss. See, e.g., Varacallo v. Mass. Mut. Life Ins. Co., 332 N.J. Super. 31, 43 (App. Div. 2000) (stating that consumer fraud requires proof of causal nexus between concealment of material fact and loss).

Further, plaintiff incorrectly suggests that once she establishes defendant committed an unlawful act, each member of the class may proceed to establish his or her own ascertainable loss. But to find liability under the CFA, more is needed than just the finding of an unlawful act. There can be no liability under

the CFA without a showing of an unlawful act, an ascertainable loss and a causal relationship between the two.[4]

We also reject plaintiff's reliance on Iliadis, 191 N.J. at 108, for the proposition that any remainder issues, especially when they are related to damages, should not stand in the way of class certification. Although it is true that "[t]he quantum of damages is invariably an individual question and does not defeat class action treatment," Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975), plaintiff confuses the amount of damages with establishing the existence of damages, which is a necessary element of a CFA claim. As the Harnish court explained:

> [W]hen courts speak of "damages," they are often referring to two distinct concepts: the "fact of damage" and the measure/amount of damages. The fact of damage, often synonymous with "injury" or "impact," is frequently an element of liability requiring plaintiffs to prove that they have suffered some harm traceable to the defendant's conduct—in other words, the "ascertainable loss" and "causal relationship" requirements under the [CFA]. Only if the fact of damage is established does a court reach the question

---

[4] We note that with respect to the alleged wrongful act, plaintiff claims that defendants admitted at trial "that Star's [ST] programs in New Jersey did not have 'program accreditation'" and that its CEO testified that it would "be a lie to say that they have program accreditation." However, we noted in our prior opinion that "genuine issues of fact existed with respect to Star's misrepresentations and omission regarding its 'programmatic' accreditation for surgical technologists." Polanco, slip op. at 2.

19

of remedy and the exact calculation of each plaintiff's damages. "While obstacles to calculating damages may not preclude class certification, the putative class must first demonstrate economic loss"—that is, the fact of damage—"on a common basis."

[Harnish, 833 F.3d at 305-06 (alteration in original) (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 187-89 (3d Cir. 2001)).]

We conclude plaintiff's liability only class fails to satisfy the predominance element of Rule 4:32-1(b)(3). Like plaintiff's earlier proposed class, the CFA allegations in the proposed liability only class still require numerous individualized inquiries rendering class certification improper. Plaintiff's claims primarily center on defendants' failure to disclose accurately its accreditation status and the attendant ascertainable loss allegedly caused by way of tuition expenditures and diminished job opportunities. Even were we to assume a wrongful act occurred, however, the proposed class cannot "speak with one voice" on those issues. See Morgan, 201 F.R.D. at 350; Little, ___ N.J. at ___ (slip op. at 42-43) (concluding that the trial court properly decertified the class where it "found no single factual pattern" and the record "demonstrated the disparate experiences of individual class members").

In our prior opinion, we concluded the court improperly precluded defendant from introducing jobs and value evidence. Contrary to plaintiff's

argument, those proofs are relevant to plaintiff's proposed liability class, and its proposed subclasses, as it relates directly to the causation and ascertainable loss elements of plaintiff's CFA claim. Indeed, the jobs evidence established that numerous members of plaintiff's proposed class obtained employment in the health care field and those who failed to do so were unsuccessful for disparate reasons.

So too with respect to the value evidence. Those proofs established that many proposed class members obtained value from their Star degree and thus the question of the value of the degree requires extensive individualized inquiries and is not answered merely by plaintiff's request for tuition reimbursement, as that remedy suggests the degree without ST certification was valueless, a fact heavily disputed by defendant and which requires highly individualized inquiries to resolve.

For example, as noted, the value evidence established that members of the putative class had widely divergent experiences and individual inquiries would be required to determine what loss, if any, they had suffered that was caused by defendant's alleged misrepresentation. In this regard the trial record reveals that of the 1135 class members: 162 students withdrew or were dismissed from the program for a variety of reasons having nothing to do with the ST law; 219

students paid no tuition or fees because of grants and scholarships; 125 students, including plaintiff, completed the program, withdrew, or were dismissed before the ST law was passed; 150 students signed the 2014 disclosure; and 99 graduates got jobs in the healthcare field upon graduation. As such, the court correctly declined to certify the liability only class, as plaintiff presented it, because there was no presentation of a class-wide ascertainable loss caused by an unlawful act.[5]

## III.

For similar reasons, we conclude the court did not abuse its discretion when it determined the proposed liability only class failed to meet Rule 4:32-1(b)(3)'s superiority requirement. That requirement necessarily "implies a comparison with alternative procedures." Iliadis, 191 N.J. at 114. "[A] class action must be better than, not merely as good as, other methods of adjudication." Carroll v. Cellco P'ship, 313 N.J. Super. 488, 509-10 (App. Div. 1998).

---

[5] We also note that plaintiff failed to provide any expert evidence on the value of a Star degree. See Thiedemann, 183 N.J. at 244 (affirming summary judgment on plaintiffs' CFA claim where plaintiffs failed to "present any expert evidence to support an inference of loss in value").

A proper analysis of whether a class action is the superior method of adjudication requires "(1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method." Iliadis, 191 N.J. at 114-15. The class members' "lack of financial wherewithal" is an "important factor" in the superiority analysis. Ibid. As far as manageability, denial of class status due to manageability concerns is disfavored because complexity is an inherent trait of class litigation. Id. at 117-20. Courts should not, however, overemphasize management considerations when contrasted with judicial economy, small claims access, and deterrence goals. Ibid. Courts should use ingenuity to conduct the litigation and guarantee the rights of both sides. Ibid. Also, courts may craft remedies for class litigation, including altering or amending the certification of a class, subdividing a class or maintaining class status with respect to only particular issues. Ibid.

Further, when courts consider alternatives to class actions, those considerations can involve "individual actions, coordinated individual actions, test or model cases, and consolidated individual actions." 2 Newberg on Class Actions § 4:85 (4th ed. 2002). In Carroll, the court considered "the use of test

cases, whereby one or more class members litigate the case with defendant's agreement that defendant would be collaterally estopped by adverse findings of fact when the remaining members bring suit." 313 N.J. Super. at 510-11. Also, Rule 4:38-1 permits the court in its discretion to order the consolidation of actions.

Even were we to agree that defendants' alleged CFA violation occurred and could be addressed on a class-wide basis, for the reasons previously expressed, the court would still need to conduct in excess of 100 separate mini-trials addressing the individualized damages claims. These proceedings would not be like a forensic auditing of the claims, but rather a series of adjudicatory proceedings in which the proposed class member would be required to establish causation and ascertainable loss. The court clearly considered the difficulties in conducting "hundreds of mini-trials" to address the differing claims and rejected plaintiff's proposal, a result we determine was not an abuse of discretion.[6]

---

[6] In this regard, defendants note that "[n]umerous opt-outs from the original class action have prosecuted their individual claims for those amounts during the same timeframe, with speedier and more efficient results." See, e.g., Guzman v. SC Acad. Holdings, Inc., No. A-3028-17 (slip op. at 5) (N.J. Super. App. Div. Apr. 18, 2019) (noting that twelve individual students of defendants' ST program who did not receive notice of the Polanco class brought individual actions which were consolidated).

To the extent we have not addressed any of plaintiff's arguments it is because we have concluded they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5391-18T1