**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3756-15T2

SHIRLEY POLANCO, individually
and on behalf of all others
similarly situated,

        Plaintiff-Respondent/
        Cross-Appellant,

    v.

STAR CAREER ACADEMY, SC ACADEMY
HOLDINGS, INC. and SC ACADEMY,
INC.,

        Defendants-Appellants/
        Cross-Respondents.

_____

Argued May 15, 2018 – Decided July 26, 2018

Before Judges Fisher, Sumners and Natali.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Docket No.
L-0415-13.

David Jay argued the cause for appellants/
cross-respondents (Greenberg Traurig, LLP,
attorneys; David Jay, Jason H. Kislin and
Paige S. Nestel, on the brief).

Patricia V. Pierce and Thomas More Marrone
argued the cause for respondent/cross-
appellant (Greenblatt Pierce Funt & Flores,
LLC, and MoreMarrone, LLC, attorneys; Patricia

V. Pierce and Thomas More Marrone, on the brief).

Joseph B. Schmit (Phillips Lytle, LLP) of the New York bar, admitted pro hac vice, argued the cause for intervenor Summer Street Capital Partners, LLC (John R. Altieri and Joseph B. Schmit, attorneys; Joseph B. Schmit, of counsel; John R. Altieri, on the brief).

Laurence B. Orloff argued the cause for intervenors Andrew Kaplan and Quad Partners LLC (Orloff, Lowenbach, Stifelman & Siegel, PA, and Arthur H. Aufses III (Kremer Levin Naftalis & Frankel, LLP) of the New York bar, admitted pro hac vice, attorneys; Laurence B. Orloff, Xiao Sun and Arthur H. Aufses, III, on the brief).

Stephen M. Orlofsky argued the cause for intervenors Gemini Investors IV, LP, Gemini Investors V, LP, James Rich and Robert Menn (Blank Rome LLP, attorneys; Stephen M. Orlofsky, David C. Kistler and Michael A. Iannucci, of counsel and on the brief).

PER CURIAM

This class action alleges violations of the New Jersey Consumer Fraud Act (Act), N.J.S.A. 56:8-1 to -20. After an adverse jury verdict, defendants Star Career Academy, SC Academy Holdings. Inc. and SC Academy, Inc. (Star) appeal from the final judgment and several pre- and post-trial orders. Star claims:

POINT I

THE TRIAL COURT'S REFUSAL TO INTERPRET THE [SURGICAL TECHNOLOGY] LAW ON SUMMARY JUDGMENT WAS REVERSIBLE ERROR.

2

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
PRECLUDING STAR FROM PRESENTING EVIDENCE TO
SHOW THAT PLAINTIFF HAD NOT ESTABLISHED THE
ELEMENTS OF THE NJCFA CLAIM THAT SHE WAS
ASSERTING ON BEHALF OF THE CLASS.

A. IT WAS REVERSIBLE ERROR TO PRECLUDE
STAR FROM PRESENTING JOBS EVIDENCE AND
"REASONS FOR UNEMPLOYMENT EVIDENCE" TO
SHOW THAT PLAINTIFF HAD NOT PROVEN HER
NJCFA CLAIM.

B. IT WAS REVERSIBLE ERROR TO PRECLUDE
STAR FROM PRESENTING "VALUE" EVIDENCE TO
SHOW THAT PLAINTIFF HAD NOT PROVEN HER
NJCFA CLAIM.

POINT III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY
REFUSING TO DECERTIFY A CLASS EVEN THOUGH
COMMON ISSUES DID NOT PREDOMINATE OVER
INDIVIDUAL ONES.

Plaintiff Shirley Polanco, individually and as the class representative, seeks to affirm the final judgment, and she cross-appeals claiming the court improperly reduced her statutorily authorized attorney fee award. She also appeals from the court's order denying her motion for leave to file a second class action complaint to add intervenor Andrew Kaplan (Kaplan) and unidentified defendants as parties. Specifically, she claims:

POINT I[1]

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED PLAINTIFF'S TIMELY MOTION TO ADD A SINGLE INDIVIDUAL DEFENDANT, AND CORPORATE AND INDIVIDUAL "DOE" DEFENDANTS. THE COURT DENIED PLAINTIFF'S REQUEST MORE THAN ONE YEAR BEFORE TRIAL AND EVEN BEFORE CLASS-WIDE MERITS DISCOVERY HAD COMMENCED, DESPITE NO SHOWING OF ANY PREJUDICE TO THE PROPOSED INDIVIDUAL MUCH LESS TO ANY "DOE," WHOSE IDENTITY WAS UNKNOWN AT THAT STAGE.

A. THE LEGAL STANDARD APPLICABLE TO A MOTION FOR LEAVE TO AMEND.

B. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND.

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN CONNECTION WITH ITS FEE AWARD TO CLASS COUNSEL

A. THE APPLICABLE LEGAL STANDARD FOR AWARDING FEES AND COSTS.

B. THE REQUESTED FEES ARE APPROPRIATE UNDER THE RENDINE/WALKER[2] FACTORS.

1. THE TIME SPENT AND RATES REQUESTED ARE REASONABLE.

C. A 75% FEE ENHANCEMENT IS APPROPRIATE.

---

[1] We have renumbered plaintiff's appellate points for ease of reference.

[2] Rendine v. Pantzer, 141 N.J. 292 (1995); Walker v. Giuffre, 209 N.J. 124 (2012).

A-3756-15T2

After a thorough review of the record, we affirm the court's order denying Star's motion for summary judgment as genuine issues of material fact existed with respect to Star's misrepresentations and omissions regarding its "programmatic" accreditation for surgical technologists. But, because we agree with Star that common questions of law or fact did not predominate over questions affecting individual members as required by Rule 4:32-1(b)(3), we vacate the court's order certifying the class. We also conclude that the court's evidentiary rulings in which it materially limited Star from introducing evidence that was relevant to Star's defenses under the Act and to challenge plaintiff's and the class members' damages were erroneous and provide an independent basis to reverse the jury's verdict.

Finally, because the court's decision denying plaintiff's request to amend the pleadings to add new parties was based, in large part, on the belated nature of the application we also vacate that order as our opinion decertifying the class removes those concerns. Accordingly, we vacate the final judgment, and any attorney fee award, and remand for proceedings in accordance with this opinion.

I.

Star and its affiliates are owners of for-profit schools, including the institution at issue that trains surgical

technicians (ST).[3]  Star's mission is to provide "performance-based occupational training to prepare students for entry-level employment" in various fields, including allied health fields.

In 2011, N.J.S.A. 26:2H-12.63 (the ST law) was passed addressing five routes for employment as a surgical technologist in a New Jersey health care facility.  One route was successful completion of a "nationally or regionally accredited educational program for surgical technologists." N.J.S.A. 26:2H-12.63(a).  An alternative route was to obtain a "certified surgical technologist credential administered by the National Board of Surgical Technology and Surgical Assisting or its successor, or other nationally recognized credentialing organization."  N.J.S.A. 26:2H-12.63(b).

There are two types of higher education accreditation: programmatic and institutional.  The Commission on Accreditation of Allied Health Education Programs (CAAHEP) and the Accrediting Bureau of Health Education Schools (ABHES) are the only nationally recognized accreditors of ST programs.  Star did not receive programmatic accreditation from CAAHEP or ABHES.  The Accrediting Commission of Career Schools and Colleges (ACCSC) is approved by the United States Department of Education (USDOE) to give

_____

[3]  The terms surgical technician and surgical technologist are used interchangeably in this opinion.

institutional accreditation, but is not authorized to give programmatic accreditation to an ST program. In August 2010, ACCSC recognized Star as an accredited institution.

Plaintiff enrolled in Star's ST program in July 2011. Her tuition was $18,213. While enrolled in the program, plaintiff asked the director of Star's ST program whether the newly passed ST law would affect her ability to gain employment as a ST. The director assured her that graduating from Star's program would qualify her under the ST law. The director of externships for Star's Clifton campus also told plaintiff that Star's ST program was accredited.

Other students questioned Star admissions officers as to how the ST law would affect them. Admissions officers discussed the issues surrounding Star's program accreditation under the ST law with their subordinates, but instructed them to "sell the program as best as [they] could."

A year after the ST law was enacted, an entire class of ST students withdrew from the program "in protest" because the Association of Surgical Technologists (AST), a national organization representing the profession, told them that the program was worthless. According to a Star administrator, admissions officers gave inaccurate information to students on the ST law and accreditation requirements.

A-3756-15T2

In August 2012, John A. Calabria of the New Jersey Department of Health (DOH) issued a memorandum addressing programmatic accreditation under the ST law that stated, "If a[n] [ST] program is listed as accredited [by the USDOE] . . . , then it is compliant with [the ST law]." Two months after Calabria's memorandum, an AST representative emailed Star that, to comply with the ST law, programmatic accreditation was necessary and that an ST program should only be considered regionally or nationally accredited for purposes of the ST law if it was accredited by CAAHEP or ABHES. Star's CEO and president disagreed with AST's understanding of the ST law, explaining that it was sufficient if a school had institutional accreditation rather than programmatic accreditation and that accreditation by ABHES or CAAHEP was unnecessary.

According to plaintiff, the National Center for Competency Testing (NCCT) administered testing to graduates of ST programs, but was not nationally recognized as required by N.J.S.A. 26:2H-12.63(b). NCCT recognized Star's ST program as approved for the "tech in surgery-certified" certification exam; in other words, graduates of the Star ST program were eligible for the exam. However, because NCCT was not nationally recognized under the ST law, they added a disclaimer to their website indicating that their exam was not accepted in New Jersey. Star's director of clinical externships contacted NCCT asking them to remove the

disclaimer and "stop making such a definitive statement that [the NCCT certification] is not accepted" in New Jersey.

Star also asked the DOH to confirm that Star's accreditation from ACCSC met the requirements of the ST law. Star represented to DOH that its ST program was accredited by the ACCSC. The DOH responded, "A[n] [ST] program offered in New Jersey that is accredited by any accrediting agency recognized by the [USDOE] meets the requirements of the [ST law]." However, while Calabria's 2012 memorandum reflected his understanding that institutional accreditation was sufficient and programmatic accreditation was not necessary, he later recognized that institutional accreditation was not sufficient and programmatic accreditation was necessary. A supplemental memorandum reflecting Calabria's change in knowledge was never issued.

Despite uncertainty about whether Star's ST program met the requirement of the ST law, Star continued to enroll students. In February 2014, Star began to provide current and prospective students with a disclosure indicating that the law was in flux and Star disagreed with any interpretation of the ST law finding that its ST program did not comply with the law.

Approximately three years after enrolling, plaintiff filed a class action complaint naming Star as the sole defendant and alleging that Star violated the Act by misrepresenting information

about the accreditation of its ST program in connection with the ST law. Plaintiff specifically claimed Star failed to disclose:

> (a) the requirements and consequences of New Jersey's [ST] Law . . .;
>
> (b) that [Star] was not a nationally or regionally accredited educational program for surgical technologists within the meaning of the [ST] Law;
>
> (c) that [Star's] [ST] [p]rogram graduates would not be permitted to obtain a [ST] credential administered by the National Board of Surgical Technology and Surgical Assisting or its successor, or other nationally recognized credentially organization;
>
> (d) that because the [Star] [ST] [p]rogram did not comply with the [ST] Law, [Star] [ST] Program graduates would not be permitted to be employed in the State of New Jersey as Surgical Technologists, under the terms of the [ST] law; and
>
> (e) that [Star's] [ST] [p]rogram did not otherwise qualify [p]laintiff and other [Star] students to practice surgical technology upon completion of the Program.

She also described her, and the other class members', ascertainable loss as tuition and loan costs. The proposed class was comprised of "all individuals who were enrolled in [Star's] [ST] [p]rogram for surgical technician training to take place in the State of New Jersey as of June 29, 2011 and thereafter."

Star filed two unsuccessful motions for summary judgment. In its second motion, the court rejected Star's request for a

definitive interpretation of the ST statute concluding that material factual questions existed surrounding Star's knowledge of the ST law and the accreditation of its ST program. The court also denied Star's motion for reconsideration.

Over Star's objection, the court certified a class consisting of individuals enrolled in Star's ST program after June 29, 2011, and appointed plaintiff class representative. The court denied Star's subsequent motion to decertify the class. We denied Star's motion for interlocutory review of that determination and its motion for reconsideration. The Supreme Court also denied Star's motion. Also, plaintiff's motion to amend the pleadings to add various defendants was denied by the court as untimely.

Prior to trial, the parties filed various in limine motions surrounding the admissibility of evidence pertaining to class members' employment, reasons for class members' unemployment, and the value of the Star ST program degree. In finding that the claims of the class addressed Star's misrepresentations and omissions, rather than jobs, the court precluded Star from including the jobs, reasons for unemployment, and value evidence for liability purposes.

The jury returned a $2.969 million verdict in favor of the class. In accordance with the Act, the court trebled the damages and entered final judgment, plus interest, in the amount of

$9,091,941.35.  Pursuant to plaintiff's motion for attorneys' fees and costs, the court awarded the class $1.7 million in attorneys' fees.

II.

Star argues in its first point that the court twice erred in refusing to grant its motions for summary judgment and, more specifically, to interpret the ST law in its favor.  We disagree and conclude that the summary judgment record established the existence of genuine and material factual questions that precluded summary judgment.

In ruling on a summary judgment motion, a trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  An appellate court reviews a grant of summary judgment de novo, using the same standard as the trial court.  Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003).  Thus, we must determine whether a genuine issue of material fact is present and, if not, evaluate whether the trial court's ruling on the law was correct. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998).  To assess whether the facts in the motion

record created a genuine and material dispute, we briefly discuss the elements and principles underpinning the Act.

The Act is to be construed broadly to meet its remedial purpose and root out consumer fraud. Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 264 (1997). The Supreme Court has emphasized that it is the "capacity to mislead [that] is the prime ingredient of all types of consumer fraud." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994). See also Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378 (1977).

The Act provides treble damages when a person suffers an "ascertainable loss" as a result of:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate. . . .
>
> [N.J.S.A. 56:8-2.]

Thus, a claim under the Act is comprised of three elements: "(1) unlawful conduct . . .; (2) an ascertainable loss . . .; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J.

372, 389 (2007) (quoting N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12-13 (App. Div. 2003)).  Unlawful practices under the Act fall into three categories: affirmative acts, knowing omissions, and regulation violations.  Cox, 138 N.J. at 17.

To suffer an ascertainable loss, a plaintiff must "suffer a definite, certain and measurable loss, rather than one that is merely theoretical."  Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 558 (2009).  "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable."  Ibid. (quoting Thiedemann v. Mercedes-Benz U.S., LLC, 183 N.J. 234, 248 (2005)).  Moreover, the ascertainable loss requirement has been understood generally in terms making it equivalent to "any lost 'benefit of [the] bargain.'"  Ibid. (alteration in original) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11-13 (2004)).

The ST law provides five routes for an individual to become eligible to "practice surgical technology in a health care facility." N.J.S.A. 26:2H-12.63.  Only two have relevance here: the successful completion of "a nationally or regionally accredited educational program for surgical technologists," N.J.S.A. 26:2H-12.63(a), and the maintenance of a "certified surgical technologist credential administered by the National

14                                    A-3756-15T2

Board of Surgical Technology and Surgical Assisting or its successor, or other nationally recognized credentialing organization," N.J.S.A. 26:2H-12.63(b).

According to Star, it is undisputed that it possessed a credential from ACCSC, a "nationally recognized credentialing organization," ibid., and therefore Star graduates, by the clear and unambiguous language of the ST statute (as informed and supported by the relevant legislative history) were eligible to take any necessary licensing exam and otherwise practice as surgical technologists. Thus, Star argued before the court and before us that it could not have violated the Act because it did not misrepresent its ability for its graduates to be certified as surgical technologists.

The court, in denying Star's second motion for summary judgment, considered interpretation of the ST Law irrelevant, stating that the critical issue was whether, beginning in 2011, Star representatives failed to disclose the widespread disagreement with its interpretation of the ST law.

We agree that in light of the significant evidence submitted by plaintiff establishing that Star made material misrepresentations to students regarding the lack of programmatic accreditation and its failure to inform its students that it was aware of concerns regarding Star's lack of such accreditation, it

was unnecessary for the court to interpret N.J.S.A. 26:2H-12.63 for plaintiff's consumer fraud claim to survive summary judgment.[4]

Factual questions abound in the summary judgment record on this point. For example, employees of Star acknowledged that Star's ST program lacked program accreditation and Star was unprepared to seek such accreditation. Also, in sworn certifications, students of Star's ST program alleged that Star failed to disclose that relevant organizations and members of the healthcare field questioned Star's compliance with the ST law. The summary judgment record also established that Star attempted at multiple times to thwart the AST from publicly interpreting the ST statute as requiring programmatic accreditation.

From these facts we conclude that an individual seeking an education from a for-profit school like Star has the inherent right to know, prior to enrollment, that the school does not hold both programmatic and institutional credentials if for no other reason than to give students the choice to attend another institution that possesses both accreditations. Students who attend Star and similar vocational institutions are primarily

---

[4] We note that for reasons not sufficiently explained in the record, and despite the undisputed controversy regarding the interpretation of the ST law, Star never sought declaratory relief in accordance with N.J.S.A. 2A:16-50 to -62.

interested in obtaining a degree to advance their professional careers and increase their earning potential. That Star was not programmatically credentialed, giving plaintiff all reasonable inferences from the summary judgment record, influenced certain potential employers of Star graduates. In light of these concerns, it is not unreasonable to conclude that a student deciding to enroll at Star, if informed that it did not have programmatic approval, would elect to enroll elsewhere and thus we cannot ignore that Star's potential and "capacity to mislead" plaintiff on this point is of material concern. <u>Cox</u>, 138 N.J. at 17.[5] Also, while the record contains allegations of multiple misrepresentations made by Star to certain class members unrelated to its programmatic accreditation — which affects the propriety of class certification, as discussed in Section III — based on just these genuine and material factual questions, summary judgment was appropriately denied.

---

[5] We note that the record contains evidence that such alternatives did exist for students interested in becoming surgical technologists. Indeed, Bergen Community College's surgical technology program possessed both programmatic <u>and</u> institutional accreditation.

III.

Star also argues that the court improperly certified the class because common issues did not predominate over individual ones. We agree.

Class actions are governed by Rules 4:32-1 and -2. Specifically, Rule 4:32-1(a) dictates:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

New Jersey courts "have consistently held that the class action rule should be liberally construed." Myska v. New Jersey Mfts. Ins. Co., 440 N.J. Super. 458, 475 (App. Div. 2015). In order to bring a class action lawsuit, it is well established that the named representative must individually possess standing to bring their claims. Rosen v. Continental Airlines, Inc., 430 N.J. Super. 97, 107 (App. Div. 2013).

Regarding the commonality of questions of law or fact, "[a]ll of the factual and legal questions in the case need not be identical for all of the proposed class members." Goasdone v. Am. Cyanamid Corp., 354 N.J. Super. 519, 528 (Law Div. 2002). In

18                                                    A-3756-15T2

fact, "a single common question" satisfies the requirement of Rule 4:32-1(a)(2).  Id. at 529.  The threshold for commonality of questions of law or fact is relatively low.  Ibid.

In addition to the requirements of Rule 4:32-1(a), a class action may be maintained when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3).  The proposed class must be "sufficiently cohesive to warrant adjudication by representation."  Illiadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 108 (2007) (quoting Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997)).  The court should conduct a pragmatic assessment of numerous factors, including:

> [T]he significance of the common questions . . . [which] involves a qualitative assessment of the common and individual questions rather than a mere mathematical quantification of whether there are more of one than the other. . . . [W]hether the "benefit" of resolving common and presumably some individual questions through a class action outweighs doing so through "individual actions." . . . [W]hether a class action presents "a common nucleus of operative facts."
>
> [Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 519-20 (2010) (citations omitted).]

A plaintiff need not show an "absence of individual issues or that the common issues dispose of the entire dispute." Illiadis, 191 N.J. at 108. The basic question is "whether the potential class, including absent members, seeks 'to remedy a common legal grievance.'" In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 431 (1983) (quoting 3B James W. Moore et al., Moore's Federal Practice ¶ 23.45[2] at 23-332 (1982)).

Among the concerns related to certifying a class based upon violations of the Act are the inherent individualized causation inquiries related to the class' ascertainable loss. As recently observed by the Third Circuit, the "fact of damage," separate and apart from the amount of damages, is "an element of liability requiring plaintiffs to prove that they have suffered some harm traceable to the defendant's conduct — in other words, the 'ascertainable loss' and 'causal relationship' requirements under the [Act]." Harnish v. Widener Univ. Sch. of Law, 833 F.3d 298, 305 (3d Cir. 2016).[6] At the class certification stage, and while analyzing predominance, a court must "formulate some prediction as to how specific issues will play out" and may not rely upon a "mere 'threshold showing' that a proposed class-wide method of

_____

[6] As Rule 4:32 is modeled after Federal Rule of Civil Procedure 23, construction of the federal rule has been described as "helpful, if not persuasive, authority." Muise v. GPU, Inc., 371 N.J. Super. 13, 31 (App. Div. 2004).

proof is 'plausible in theory.'"  Id. at 304 (quoting In re Hydrogen Peroxide, 552 F.3d 305, 311, 321, 325 (3d Cir. 2008)). Also, "[a]lthough the computation of damages among the members of the class would differ, [and] this factor alone is not sufficient in itself to justify dismissal of a class action," Lusky v. Capasso Bros., 118 N.J. Super. 369, 373 (App. Div. 1972), a class "'must first demonstrate economic loss' — that is, the fact of damage — 'on a common basis,'" Harnish, 833 F.3d at 306 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 189 (3d Cir. 2001)).

In Morgan v. Markerdowne Corp., 201 F.R.D. 341, 345 (D.N.J. 2001), the court found that individualized causation issues precluded class certification based on a consumer fraud claim.  In that case, the putative class alleged that the defendant, a computer training school, made numerous misrepresentations about the school's job-placement rate and the ability of students to obtain employment.  Ibid.  Specifically, the class alleged that the school made misrepresentations through oral statements, brochures, and false alumni testimonials.  Ibid.

The court acknowledged that, although proof of reliance is not required under the Act, the plaintiff was still required to establish that an ascertainable loss was caused by an unlawful action attributable to the defendant.  Id. at 350.  In denying

21

class certification, the court concluded that many of the proposed class members "suffered no ascertainable loss whatsoever" because they found work after attending the school and, thus, "typicality, commonality, and predominance" failed to exist. Ibid. The court further explained that, as to those class members who suffered an ascertainable loss as a result of unemployment, they too could not maintain a class action as they "[could not] speak with one voice in declaring an unlawful practice of [the defendant] to be the cause of such loss" because of the varying misrepresentations and reasons for enrollment. Ibid.

Here, the individualized factual inquiries surrounding Star's misrepresentations and the nexus between those misrepresentations and omissions and the class members' ascertainable loss compels decertification.

Plaintiff's complaint alleged that Star misrepresented and failed to disclose the requirements of the ST law in relation to Star's ST program. As noted, the class was subsequently defined as "all individuals who were enrolled in [Star's] Surgical Technology Program for surgical technicians training to take place in the State of New Jersey as of June 29, 2011 and thereafter." At a hearing on Star's motion for reconsideration, plaintiff's counsel confirmed the narrow scope of the class stating that the "case is about" the "fact that Star didn't notify [the class

regarding] . . . potential issues about how the statute was being interpreted" and the "failure of Star to . . . make everybody aware . . . [t]hat [Star] was stuck in this muddle of . . . what [the ST law] means." In terms of damages, counsel explained that the class pursued an "expectation interest[s]" theory in terms of the value of the education they thought they were receiving, which was to be numerically based upon the tuition paid.

However, as Star predicted, and what was borne out at trial, the class' claims under the Act devolved into a multitude of individualized inquiries. Indeed, plaintiff's counsel argued at trial that, "[t]his case is not limited to what Star said about the [ST] [l]aw or didn't say about the [ST] [l]aw. It's broader than that." Counsel elaborated that, rather than a single fraudulent scheme, in addition to the issues surrounding the ST law, Star failed to advise the class about: (1) their ineligibility to sit for the necessary certification test; (2) Star's "sham externship program" that failed to enable eligibility for the NCCT certification; and (3) Star's failure to "come clean" about its job statistics.

Consistent with this expansive nature of the class, the parties stipulated at trial (after Star twice objected to class certification) that the class consisted of certain sub-groups: 219 members who did not pay tuition due to government grants (group

one); 125 members who ceased attending Star prior to the passage of the ST law (group two); 150 members who began attending Star on or after Star issued its disclosure to current and prospective ST students (group three); 162 members who were dismissed or voluntarily withdrew from the Star ST program (group four); and 99 members who graduated from Star's ST program and found jobs with the ST field (group five). The sub-groups were formed to analyze "the impact of total amounts paid based on certain facts and circumstances of specific class members."[7]

The class claims thus pertained to an array of misrepresentations and omissions surrounding the ST law and Star's ST program, externship program, and job statistics in violation of the Act. A class based upon these disparate series of alleged misrepresentations simply cannot satisfy the predominance requirement of Rule 4:32-1(b)(3) because innumerable individualized inquiries are necessary to address the causal

---

[7] Although plaintiff based its damages claim on the tuition paid by the class, counsel repeatedly claimed during trial that the class member also sustained damages based on the wasted time spent in the Star ST program. No evidence, other than the paid tuition, was submitted to quantify that alleged loss and which class members sustained it.

connection between Star's actions and the class' ascertainable loss.[8]

We acknowledge that a plaintiff need not show an "absence of individual issues or that the common issues dispose of the entire dispute." Illiadis, 191 N.J. at 108. But here the class seeks to address differing actions on the part of Star that require us to consider on an individualized basis the causal connections between Star's varying violations under the Act and the wildly different class members' ascertainable losses. The individualized inquiries necessary to evaluate the CFA claim include: (1) whether each category of misrepresentation or omission actually occurred; (2) what precise misrepresentation or omission was communicated to each class member; and (3) whether each class member suffered an ascertainable loss that was caused by the alleged

---

[8] Any doubt regarding the broad scope of the class as ultimately constituted is answered by reviewing the first question of the verdict sheet in which the jurors were permitted to impose liability upon Star upon finding it "engaged in either . . . an unconscionable commercial practice of affirmative representation regarding getting plaintiffs to enroll or to remain enrolled in defendant's surgical technology program or a knowing concealment of material information made with the intent to deceive regarding getting plaintiffs to enroll or to remain enrolled in the defendant's surgical technology Program." That question invited the jurors to find liability on behalf of the class exactly as plaintiff sought — not on a common question that predominated but on a host of disparate misrepresentations with different consequences concerning the causative loss, if any, to certain class members.

misrepresentation or omission. Similar to the class in <u>Morgan</u>, the present class "cannot speak with one voice in declaring an unlawful practice" of Star to be the cause of their losses. By way of example, sub-group three of the class — those who enrolled after Star's disclosure surrounding the ST law and its lack of program accreditation — demonstrates the significant causation and ascertainable loss barriers precluding class certification because this group admittedly enrolled <u>after</u> Star addressed in February 2014, or at least attempted to address, the concerns underlying the class' initial misrepresentation claims.

While we acknowledge the court divided the class into the aforementioned sub-groups to analyze the total paid by the class in relation to the differing circumstances of certain class members, in our view that segregation nevertheless demonstrates the significant individualized issues related to the nexus between Star's misrepresentations and the class members' damages. And, although the class members' damage calculations may differ, <u>see</u> <u>Lusky</u> 118 N.J. Super. at 373, our concerns relate to the fact that the class, as evidenced by the sub-groups, cannot "demonstrate economic loss . . . on a common basis," <u>Harnish</u>, 833 F.3d at 306.[9]

---

[9] The court's final judgment further illustrates the defective nature of the class. That order directs distribution of over nine million dollars "to the [c]lass [m]embers on a pro rata basis." Thus, damages could be awarded to class members who were not harmed

While we find that the class must be decertified, our decision should not be interpreted to conclude that a class is not an appropriate vehicle to address Star's purported misrepresentations and omissions surrounding the ST law for those who have paid tuition fees or other ascertainable losses. Such a class action may further the goals of judicial economy, cost-effectiveness, convenience, and consistent treatment of class members, Iliadis, 191 N.J. at 104. However, any certified class must satisfy the relevant Rules governing class actions. That simply did not occur here.

## IV.

Star also argues that the court committed reversible error by precluding it from introducing evidence at trial related to: jobs that class members held (jobs evidence); efforts of class members to get positions (reasons for unemployment evidence); and the value of the Star diploma to members of the class (value evidence). We agree. We address this issue because it serves as an independent basis to reverse the jury's verdict and to provide guidance with respect to any future trial proceedings.

A court's evidentiary rulings are entitled to substantial

---

and despite the absence of predominant class issues. Such an award is inconsistent with class action compensation principles. See Lewis v. Casey, 518 U.S. 343, 349 (1996).

deference. <u>Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.</u>, 202 N.J. 369, 374 (2010). A court's determination to admit evidence will not be reversed absent a finding of abuse of discretion. <u>State v. Wakefield</u>, 190 N.J. 397, 491 (2007). Under that standard, substantial latitude is afforded to a trial court in deciding whether to admit evidence, and "an appellate court should not substitute its own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." <u>Id.</u> at 491 (quoting <u>State v. Brown</u>, 170 N.J. 138, 147 (2001)).

Star maintains that the court erred in failing to permit jobs evidence which would have established that members of the class were employed as surgical technologists or in related fields. Star also argues that the court erred in not admitting value evidence that would have proven that for many graduates the Star diploma was not worthless. Star also sought to establish that its ST program compared positively with other similar programs and that its graduates were employed in jobs similar to the graduates of other programs.

The court admitted jobs evidence only in relation to Star's reporting requirements and reasons for unemployment evidence only to assess class members' credibility. Value evidence was deemed largely inadmissible. We find that the jobs, reasons for

28

unemployment, and value evidence were relevant to the materiality of the purported misrepresentations, the issue of causation under the CFA and to the quantum of any damages.  We therefore conclude that the court abused its discretion in failing to admit such evidence.

N.J.R.E. 401 defines relevant evidence as evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."  Unless otherwise prohibited, "all relevant evidence is admissible."  N.J.R.E. 402.

First, regardless of whether the class sought damages based upon out-of-pocket expenses or an expectation theory, the value evidence was directly relevant to mitigate the class' damages. Indeed, such evidence could have established what plaintiff and the class received in return for attending Star's program.  The class cannot seek damages based upon the tuition paid to Star while precluding Star from establishing that the education had some value.

The jobs evidence established that members of the class were working as surgical technologists or in related fields and was relevant to the mitigation of the class' damages.  It also tended to "prove or disprove" whether Star's actions caused the class to suffer an ascertainable loss. And, the reasons for unemployment evidence directly related to the causation issue under the Act as

it would have permitted Star to demonstrate that certain members of the class withdrew or were dismissed from the ST program for reasons unrelated to the ST law.

Plaintiff successfully thwarted the introduction of this evidence by maintaining that its damages theory was based on the class members' loss of tuition not lost wages or other job related damages and therefore the case was fundamentally different than the damages sought in Harnish or Markerdowne. But a party's stated theory of a case cannot serve as the basis to preclude an adverse party from introducing evidence to defend a claim, particularly when the evidence has the tendency in reason "to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Here, the excluded evidence related to materiality, causation and ascertainable loss. We acknowledge a trial court's authority under N.J.R.E. 403 to exclude otherwise relevant evidence. However, our review of the trial record leads us to conclude that the preclusion of the value, jobs, and reasons for unemployment evidence resulted in a manifest denial of justice.

## V.

We also vacate the court's order denying plaintiff's motion to amend the complaint to add new parties. The court's decision to deny plaintiff's request to amend was largely based on the belated nature of the application as it was filed after the initial

summary judgment motion and after the class was certified and shortly before the then scheduled trial date. As we have vacated both the class certification order and the jury verdict, those concerns no longer exist. Accordingly, plaintiff may refile the motion to amend on remand. We do not pass on the merits of any such application.

Finally, because we have vacated the final judgment, which incorporated the jury's verdict and the award of attorney's fees under the Act, we need not address plaintiff's challenges to the court's fee award.

Affirmed in part, reversed and vacated in part and remanded for trial proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31                                                          A-3756-15T2